IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02853-KLM

STACIE GRANT,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on review of the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income Benefits ("SSI") pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401, *et seq.* The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

The Court has reviewed Plaintiff's Opening Brief [#13][2]; Defendant's Response Brief [#17] ("Response"), the Social Security Administrative Record [#11] ("Tr."), and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

---

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#12].

[2] "[#13]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

## I. Background

In May 2017, Plaintiff filed an application for SSI, alleging that she became disabled in March 2017.  Tr. 144-45.  Plaintiff alleged disability due to Asberger's Syndrome, cerebral palsy, scoliosis, PTSD, anxiety, left leg length discrepancy, and withered left calf muscle.  *Id.* 18.  Plaintiff was born on September 13, 1973, and was 43 years old on the date of her application.  *Id.* 23.

Plaintiff's application was denied, Tr. 81-84, and a hearing was held on September 6, 2018 before Administrative Law Judge ("ALJ") Jamie Mendelson.  *Id.* 31-51.  The ALJ denied Plaintiff's claim for benefits in a decision dated January 17, 2019.  *Id.* 13-25.

In the sequential evaluation process required by law, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 10, 2017, the application date.  Tr. 15. At step two, the ALJ found Plaintiff had the following severe impairments:  "leg length discrepancy; mild scoliosis; cerebral palsy; posttraumatic stress disorder; panic disorder; adjustment disorder; major depressive disorder."  *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairments.  Tr. 16. In making that determination, the ALJ considered Listings 1.04, 11.02, 11.07, and 11.18 as to Plaintiff's physical impairments, and Listings 12.04, 12.06 and 12.15 as to Plaintiff's mental impairments.  *Id.*

As to residual functional capacity ("RFC"), the ALJ found that Plaintiff has the capacity to perform light work "with the following additional limitations:

> The claimant can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  The claimant can never work at unprotected heights or around heavy dangerous machinery.  Mentally, the claimant can understand,

remember, and carry out simple, routine tasks; and occasionally interact with supervisors and co-workers, but must have no interaction with the public.

*Id.* at 17. The ALJ also found that Plaintiff's "medically determined impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* 18.

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a waitress. Tr. 23. At step five, the ALJ found considering Plaintiff's age, education, work experience, and RFC that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* 24. This included representative occupations such as a document scanner, routing clerk, and documen*t/*paper shredder. *Id.* Plaintiff's claim for benefits was therefore denied. *Id.*

The Appeals Council declined Plaintiff's request for review. Tr. 1-5. Thus, the ALJ's decision became final for purposes of judicial review.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she

is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995). The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with

substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

A court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. However, it "may not reweigh the evidence nor substitute [its] judgment" for the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice. . . ." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

### III.  Analysis

Plaintiff argues that her mental health impairments meet, equal, or exceed Listing 12.04, and that the ALJ's determination that she did not meet the Listing was not based on substantial evidence. *Opening Brief* [#13] at 4, 7. Additionally, Plaintiff argues that the ALJ improperly weighed the medical evidence, and failed to consider the evidence from the treating provider. *Id.* at 4-7. Plaintiff asserts in that regard that the ALJ erred in not giving the opinion of her mental health treating provider controlling weight or considering the appropriate regulatory factors. *Id.* at 7-10. Accordingly, Plaintiff argues that the RFC determination at step five also fails as a matter of law. *Id.* at 4. The Court now turns to those arguments.

A.      **Whether the ALJ Erred at Step Three**

At step three, the determination is made "'whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity.'" *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir 200) (citations omitted). If the impairment meets or is equivalent to a listing, the impairment is "conclusively presumed to be disabling, and the claimant is entitled to benefits." *Id.* "To show that an impairment or combination of impairments meets the requirements for a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Id.* (citing 20 C.F.R. §§ 404.1525, 416.925).

Plaintiff claims that she meets the requirements of Listing 12.04, and that the ALJ erred in not so finding. *Opening Brief* [#13] at 5.[3] To meet the requirements of Listing 12.04 (depressive, bipolar, and related disorders), a claimant must show that in addition to having depressive or bipolar disorder which meets the "A" criteria, she meets either the "B" or the "C" criteria. The "A" criteria is not at issue. The "B" criteria requires "an extreme limitation in one, or a marked limitation in two, of the following areas of mental functioning": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; or (4) adapting or managing oneself. 20 C.F.R. pt 404, subpt. P, app. 1, § 12.04. The ALJ found that Plaintiff did not meet this criteria as to Listing 12.04 or the other mental health Listings that she considered because

---

[3] While Plaintiff also refers to Listing 12.05 (intellectual disorders) (*Opening Brief* at 7), she does not present any evidence or argument that she meets that Listing, and the Court thus focuses on Listing 12.04.

Plaintiff only had mild limitations in understanding, remembering, or applying information and adapting or managing oneself, and moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. Tr. 16-17. The ALJ relied on the opinions of consultative examiner Dr. Aimee Henley and State agency psychological consultant Anne Naplin, Ph.D. in so finding. *Id.*

Plaintiff asserts, however, that her own testimony and that of her treating provider, Dr. Allan Crandell, supports a finding that she met Listing 12.04. *Opening Brief* [#13] at 5-7. Plaintiff's own testimony cannot establish that a Listing is met, however, as a claimant must provide specific medical findings to establish this, as discussed previously. *See Lax*, 489 F.3d at 1085. As to Plaintiff's treating provider, Dr. Crandell diagnosed Plaintiff with major depression with psychotic features, agoraphobia with panic disorder and a generalized anxiety disorder, and opined that Plaintiff had both marked and extreme restrictions. Tr. 637-39. Plaintiff argues that his opinion should have been given controlling weight after an analysis of the relevant regulatory factors, and that the ALJ erred in not conducting that analysis. *Opening Brief* [#13] at 8-9.

As noted by the Commissioner, the regulations and case law Plaintiff relies on have, however, been superseded and abrogated by the revised regulations for evaluating opinions that the agency promulgated on March 27, 2017, for claims filed after that date. *See Response* [#16] at 6 (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). The revised regulations shift the nature and scope of what evidence is categorized as a medical opinion and significantly alter agency policies on the consideration of opinion evidence. *See id.*

Thus, the agency previously deemed statements from an acceptable medical source that reflected judgments about the nature and severity of a claimant's impairment(s), including the claimant's symptoms, diagnosis, and prognosis, to be "medical opinions." *See* 20 C.F.R. §§ 416.927(a)(2) (2016), 416.927(a)(1) (2017). In revising the regulation, the agency determined that "[a] more appropriate focus of medical opinions would be perspectives from medical sources about a claimant's functional abilities and limitations." 81 Fed. Reg. at 62,562. A medical opinion is now defined as "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in work-related functional abilities. 20 C.F.R. §416.913(a)(2) (2017).

Moreover, the new regulations substantially revise agency policy with respect to evaluating medical opinion evidence. *See* 20 C.F.R. § 416.920c (2017). As an initial matter, the regulations no longer use the term "treating source[,]" but use the phrase "your medical source(s)" to refer to the medical sources a claimant chooses to use. *See* 20 C.F.R. § 416.920c (2017). More importantly, following notice and comment, the Commissioner chose not to retain the "treating source rule," which was based on "the presumption that a claimant's sole treating physician generally has . . . longitudinal knowledge and a unique perspective." 81 Fed. Reg. at 62,573.[4] As explained in a recent case from this Court:

---

[4] In doing so, the agency noted that since its adoption of the "treating source rule" in 1991, healthcare delivery has changed in significant ways, diminishing the rule's underlying presumption. *Id.* The long-term doctor-patient relationship with a single primary care provider is now virtually obsolete. *Id.* Among other things, care providers are increasingly specialized and healthcare is rendered by multidisciplinary teams rather than a singular treating physician.

> The Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner will consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

*Harris v. Saul*, No. 19-v-03715-NRN, 2021 WL 406080, at *2 (D. Colo. Feb. 5, 2021).

Supportability and consistency are the two most important factors for the ALJ to consider. *Harris*, 2021 WL 406080, at *2 (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). As to supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is required to explain how he or she considered the supportability and consistency factors for a medical source's medical opinions, and may, but is not required to, explain how he or she considered the other three factors unless the ALJ finds that two or more opinions about the same issue are equally well-supported. 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

In the case at hand, the ALJ conducted the analysis under the new regulations, which was appropriate as Plaintiff's application was filed in May 2017, after the new

regulations took effect. The ALJ was thus not required to apply the treating physician rule or analyze the treating physician's opinion under the old framework, but to consider the persuasiveness of Dr. Crandell's opinion. The Court agrees with Plaintiff that the ALJ erred in not discussing or referencing the opinion of Dr. Crandell in connection with her findings at step three. *See* Tr. 16-17. However, the Court finds this error was harmless as the ALJ addressed Dr. Crandell's opinion in connection with assessing Plaintiff's RFC (*id.* at 23), as discussed below.

Thus, the ALJ noted Dr. Crandell's opinion that Plaintiff "had marked limitations in restrictions of daily living; extreme limitations in difficulties in maintaining social functioning; moderate limitations in difficulties in maintaining concentration, persistence or pace; and four or more episodes of decompensation within a 12-month period. . . ." Tr. 23; *see also* 639-40. The ALJ further stated that Dr. Crandell "opined that Plaintiff's mental impairments met a listing, but did not identify which listing, and that the claimant would miss than four days per month from work." *Id*. The ALJ found these limitations and opinions "unpersuasive, except for the moderate limitation in difficulties maintaining concentration, persistence, or pace." *Id*. Applying the supportability and consistency factors, the ALJ stated that "[t]he other limitations are not supported by the medical record evidence and are inconsistent with the claimant's reports to other medical sources and her activities of daily living such as going to coffee shops, applying to start college, going to the library, and reading." *Id.* Further, the ALJ stated that the limitations were not consistent with the generally normal mental status examinations in the record. *Id.*[5]

---

[5] The medical evidence as to Plaintiff's mental impairments, Plaintiff's reports to other medical sources, her daily activities, and the "normal mental status examinations" were discussed

The ALJ instead based her mental RFC assessment primarily on the opinion of state agency psychological consultant Dr. Naplin, who opined to more restrictive limitations than that of consultative examiner Dr. Henley and whose opinion the ALJ found "more persuasive." Tr. 22-23. While the ALJ found that Dr. Henley's opinions regarding mild limitations "were supported by her examination findings," she instead adopted Dr. Naplin's findings as to moderate ratings for concentration, persistence, and pace and social interaction which she found to be more persuasive than Dr. Henley's opinion. *Id.* at 22. However, the ALJ went further and adopted even more restricted limitations than Dr. Naplin. Thus, while Dr. Naplin opined that Plaintiff could perform work of limited complexity but which required accuracy and attention to detail, the ALJ found this was "not consistent with moderate restriction in concentration, persistence, or pace." *Id.* 22. Instead, the ALJ limited Plaintiff to simple, routine tasks. *Id.* The ALJ also agreed with Dr. Naplin's finding that Plaintiff should have minimal interaction with the public, but further restricted the RFC to no interaction with the public. *Id.* Additionally, the ALJ imposed limitations of occasional interaction with supervisors and co-workers. *Id.*

From the foregoing, the ALJ found under the new framework that the opinion of the state agency psychologist was persuasive, and that Dr. Crandell's opinion was unpersuasive. The ALJ addressed the appropriate factors of supportability and consistency, and was not required to consider the treatment relationship that Dr. Crandall had with Plaintiff or the other two factors. Plaintiff has not addressed this, or shown how the ALJ erred under the new regulations. In fact, Plaintiff's Opening Brief [#13] did not

---

in more detail by the ALJ prior to her discussion of Dr. Crandell's opinion. *See id.* at 20-22.

acknowledge the new regulations, and Plaintiff did not file a Reply Brief addressing the Commissioner's arguments as to application of these regulations.  Given the fact that the ALJ addressed Dr. Crandell's opinion in connection with the RFC analysis and found it unpersuasive, which finding Plaintiff has not shown is erroneous, the ALJ's failure to address Dr. Crandell's opinion is harmless error as the ALJ's findings "confirm the step three determination under review." *Fischer–Ross v. Barnhart,* 431 F.3d 729, 734 (10th Cir. 2005) (finding that a step three error does not automatically require remand; instead, the Court must engage in a harmless error analysis and consider whether "findings made elsewhere in the ALJ's decision confirm the step three determination").

Accordingly, based on the argument provided, the Court finds that the ALJ's opinion is supported by substantial evidence and that there is no reversible error.

### IV.  Conclusion

For the reasons set forth above, it is

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

Dated:  March 15, 2021

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge